## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PATRICK J. PRIBULA, ROBERT
MICHELETTI, and JAMES G. ZARRA,

      Plaintiffs,

          v.

WYOMING AREA SCHOOL DISTRICT, et
al.,

      Defendants.

CIVIL ACTION NO. 3:06-CV-2039

(JUDGE CAPUTO)

### MEMORANDUM

Presently before the Court is Defendants Wyoming Area School District, Raymond Bernardi, Anthony Sobeski, Antoinette Valenti, John Lanunziata, Nick DeAngelo, John Bolin, Jerry Wall, and John Marianacci's Motion for Summary Judgment. (Doc. 25.) For the reasons stated below, the Court will grant Defendants' Motion in part and deny Defendants' Motion in part.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

### BACKGROUND

Plaintiffs filed their Complaint pursuant to 42 U.S.C. § 1983 on October 17, 2006, alleging violations under the First and Fourteenth Amendments. (Doc. 1.) Defendants filed a Motion to Dismiss on February 12, 2007 (Doc. 7), and on July 16, 2007 this Court issued an Order granting in part and denying in part Defendants' motion, thereby dismissing all of Plaintiffs' claims except their First Amendment retaliation and punitive damages claims against the School District and Individual Defendants (Doc. 12). Defendants filed the current Motion for Summary Judgment (Doc. 25) along with a Statement of Facts (Doc. 26) and Brief

in Support (Doc. 28) on October 15, 2008.  Plaintiffs filed a Brief in Opposition (Doc. 35) and

an Answer to Defendants' Statement of Facts (Doc. 34) on November 24, 2008, and filed

a Response to Defendants' Statement of Facts (Doc. 36) on November 25, 2008.

Defendants filed a Reply (Doc. 37) to Plaintiff's Brief in Opposition on December 15, 2008.

Thus, Defendants' Motion for Summary Judgment has been completely briefed and is

currently ripe for disposition.  The undisputed facts of the case are as follows.

Plaintiff Pribula took an active role in the 1990 school board elections for the Wyoming

Area School District ("the School District"), and opposed the candidacies of Defendants

Valenti and Sobeski in that election.  (Defs.' Statement of Facts, Doc 26 ¶ 6; Pls.' Response

Statement, Doc. 36 ¶ 6.)  In 1991, Pribula began employment with the Wyoming Area School

District in the position of Superintendent of Buildings and Grounds, and held this position

until 1997.  (Defs.' Statement ¶ 7; Pls.' Response ¶ 7.)  After his contract was not renewed

in 1997, Pribula sued school board members, including current Defendants Sobeski,

LaNunziata, and Valenti, and the School District, alleging that they did not renew his contract

in retaliation for his activities in the 1990 school board elections.[1]  (Defs.' Statement ¶ 8; Pls.'

Response ¶ 8.)  In January of 2004, following a vote of the school board, the School District

hired Pribula in the position of Superintendent of Buildings and Grounds and Capital

Projects/Construction Manager.  (Defs.' Statement ¶¶ 9-10; Pls.' Response ¶¶ 9-10.)

Defendants DeAngelo, Sobeski and Valenti were school board members in January of 2004,

and did not vote in favor of rehiring Pribula.  (Defs.' Statement ¶ 11; Pls.' Response ¶ 11.)

---

[1]

In his deposition for this case, Pribula also mentions that, in 1991, he sought injunctive relief in state
court after the school board passed a resolution to eliminate his position.  Pribula states that the case
was scheduled for trial, but the School District reversed course, he retained his job, and the case did
not proceed to trial.  (Pribula Deposition, Doc. 34, Ex. 30, at 173:03 - 173:24.)

In November of 2005, the Wyoming Area School District held school board elections and a "new" school board was seated in December 2005.  Pribula and his co-Plaintiffs were active supporters of candidates in the 2005 elections, some of whom were unsuccessful in either obtaining or retaining their school board seats.  This support consisted of attendance at cocktail parties, mailing post cards on behalf of the candidates, and general word-of-mouth support of these candidates to the Plaintiffs' families, friends, neighbors, and so forth.

During his second term of employment with the Wyoming Area School District, Pribula reported to the school board and Superintendent of Schools, Raymond Bernardi.  (Defs.' Statement ¶ 22; Pls.' Response ¶ 22.)  Pribula alleges that, starting in December 2005, Bernardi engaged in a pattern of injurious actions, such as changing Pribula's schedule, assigning Pribula to demeaning tasks, and attempting to embarrass and humiliate Pribula by conducting unnecessary reviews of his work, all as part of a plan to force Pribula from his job.  (Defs.' Statement ¶ 25; Pls.' Response ¶¶ 24-25.)  Pribula claims that the Defendants acted against him by (1) purposefully giving him low scores on employee evaluations that did not reflect his actual performance, (2) altering the terms and conditions of his employment, (3) reducing his compensation, and (4) interfering with the performance of his duties.  (Defs.' Statement ¶ 27; Pls.' Response ¶ 27.)  Pribula continued in his position with the Wyoming Area School District until he quit in November of 2006.  (Defs.' Statement ¶ 12; Pls.' Statement ¶ 12.) Pribula alleges that he suffered a violation of his the rights guaranteed to him by the First Amendment to the United States Constitution because the Defendants acted to retaliate against him for filing his 1997 lawsuit and because he had further campaigned against certain school board members in 2005. (Defs.' Statement ¶¶ 13-14; Pls.' Response, ¶¶ 13-14.)

3

Plaintiff James Zarra, a personal friend of Pribula, began employment with the Wyoming Area School District as a Network/Personal Computer Administrative Engineer in October of 2001.  (Defs.' Statement ¶¶ 40-42; Pls.' Response ¶¶ 40-42.)  After initiating his employment under a one-year contract, Zarra's contract was extended until October 14, 2006 and then further extended to October 14, 2009.  (Defs.' Statement ¶¶ 44-46; Pls.' Response ¶¶ 44-46.)  On December 14, 2005 the school board voted to rescind the extension of Zarra's contract, with Defendants Sobeski, DeAngelo and Valenti abstaining from the vote.  (Defs.' Statement ¶¶ 47-48; Pls. Response ¶¶ 47-48.)  Zarra's contract ending October 14, 2006 was not renewed.  (Defs.' Statement ¶ 50; Pls.' Response ¶ 50.)  The Defendant School District conducted interviews for Zarra's position and made an offer to Zarra to continue his position at a lower salary, which Zarra declined.  (Defs.' Statement ¶ 51; Pls.' Response ¶ 51.)  Zarra claims that the school board's decision to rescind, and later not renew, his contract was in retaliation for his friendship with Patrick Pribula and Zarra's attendance at a political function in the summer proceeding the 2005 school board elections.

Plaintiff Robert Micheletti entered employment with the Wyoming Area School District in November 1997 as Assistant Secondary Center Principal and continued his employment with the School District until his retirement in May of 2006.  (Defs.' Statement ¶¶ 54-55; Pls.' Response ¶¶ 54-55.)  In June of 2003, Micheletti was transferred from his position as principal of Montgomery Avenue and SJD Elementary School to principal of grades nine through ten at the Secondary Center.  (Defs.' Statement ¶ 56; Pls.' Response ¶ 56.)  In December 2003, the school board approved his request to take a sabbatical leave for the second semester of the 2002-2003 school year.  (Defs.' Statement ¶ 57; Pls.' Response ¶

4

57.)  In September 2004, the school board approved his appointment as Acting Assistant Superintendent for the 2004-2005 school year.  (Defs.' Statement ¶ 58; Pls.' Response ¶ 58.)  In August 2005, the school board approved Micheletti's request to take a medical leave of absence from August 11, 2005 through January 23, 2006.  (Defs.' Statement ¶ 59; Pls.' Response ¶ 59.)

In November of 2005, the school board adopted an administrative compensation plan referred to by the parties as "Act 93." (Defs.' Statement ¶ 63; Pls.' Response ¶ 63.)   Plaintiff Micheletti was involved in the development of this plan.  (Micheletti Dep., Doc. 39, at 50:23-51:16.)  In December of 2005 this plan was rescinded and replaced by a "revised Act 93." (Defs.' Statement ¶¶ 65-66; Pls.' Response ¶¶ 65-66.)

In March of 2006, Micheletti delivered a letter to the school board, which they subsequently approved, stating his intent to retire effective May 5, 2006.  (Defs.' Statement ¶ 62; Pls. Response ¶ 62.)  After the school board approved his letter stating his intent to retire, Micheletti delivered another letter to the school board asking to retire in June 2006 rather than May 2006.  (Defs.' Statement ¶ 69; Pls.' Response ¶ 69.)  The extra month of additional time requested would have made Micheletti eligible for increased pension benefits during his ensuing retirement.  (Micheletti Dep., Doc. 39, at 18:10-18-19.)  This request was denied by the school board.  In total, Micheletti claims that he was deprived of contractual entitlements in excess of eighty-eight thousand dollars ($88,000.00) when the school board replaced the original Act 93 with the "revised" Act 93 compensation plan in December 2005, and that he was unable to maximize his pension due to the school board's denial of his request to extend his retirement.

## LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law.  Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one.  *See id.* at 248.   An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party."  *Id.*

Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law.  *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983).  The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party.  *See White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988).   Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material

facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law.  *See Anderson*, 477 U.S. at 256-57.

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 249.

## DISCUSSION

In the current case, Plaintiffs bring suit against the Wyoming Area School District and eight members of the School District's board for the alleged deprivation of Plaintiffs' First Amendment rights.

In order to directly bring a suit against a local governing body such as the Defendant School District pursuant to 42 U.S.C. § 1983 for monetary, declaratory, or injunctive relief, Plaintiffs must show that the allegedly unconstitutional activity either implements or executes a policy, statement, ordinance, regulation, or decision officially adopted and promulgated by the officers of the local governing body.  *Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658, 690 (1978).  Thus, in order to establish their claim against the Defendant School District, Plaintiffs must show that (1) they suffered a deprivation of a federal right, (2) that was the result of either an express policy, widespread custom, or deliberate act of a decision-maker with final policy-making authority which (3) proximately caused Plaintiffs' injuries.  *Id.*

Further, the United States Supreme Court has held that school administrators are entitled to qualified or "good faith" immunity from suits arising under 42 U.S.C. § 1983. *Wood v. Strickland*, 420 U.S. 308 (1975), *overruled on other grounds*, *Harlow v. Fitzgerald*,

457 U.S. 800 (1982).

> A school board member would lose his immunity from a § 1983 suit only if 'he knew or reasonably should have known that the action he took within his sphere of official responsibility would violate. . . constitutional rights . . . or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury . . ..

*Butz v. Economou*, 438 U.S. 478, 498 (1978) (quoting *Wood*, 420 U.S. at 322).  In short, "[a] government official is entitled to qualified immunity if his 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Berg v. County of Allegheny*, 219 F.3d 261, 272 (3d Cir. 2000) (quoting *Harlow*, 457 U.S. at 818).

## I.    First Amendment

Since the Plaintiffs must first show that they suffered a violation of a federal right in order to either bring suit against the School District or to overcome the qualified immunity defense raised by the individual Defendants, the first question before the Court is whether Plaintiffs suffered a violation of their First Amendment rights.  In order to proceed on their § 1983 First Amendment retaliation claims, Plaintiffs must show that: (1) Plaintiffs engaged in activity protected by the First Amendment, (2) the government–in this case, the School District or individual members of the school board–responded with retaliatory action sufficient to deter a person of ordinary firmness from exercising his or her rights, and (3) the protected activity was the cause of the retaliatory action.  *Lauren W. ex rel. Jean W. v. Deflaminis*, 480 F.3d 259, 267 (3d Cir. 2007); *Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006).

### A.    Protected Activity

Accordingly, the Court must first determine whether Plaintiffs engaged in activity that is protected by the First Amendment.  Plaintiffs and Defendants agree that Pribula engaged in protected activities, such as his 1997 lawsuit against certain school board members and

his involvement in the 1990 and 2005 school board election campaigns.  According to Plaintiffs, these protected activities were imputed and attributed to Zarra due to his friendship with Pribula such that they were collectively viewed as part of a political faction opposing the school board members who are now Defendants in this action.  Defendants acknowledge that Plaintiffs are close friends and raise no arguments in either their motion or supporting brief that Zarra' association with Pribula does not entitle him to First Amendment protection. Plaintiffs further allege that Micheletti engaged in protected activity by supporting the original "Act 93 Administrative Compensation Plan" and because, like Zarra, he was a friend and associate of Pribula.  Defendants' motion and supporting brief contain no arguments that Micheletti's behavior should not be considered protected activity.  Thus, having been presented with clear evidence that Pribula engaged in protected activity, and since the parties are, ostensibly, in agreement that Zarra and Micheletti also engaged in this protected activity due to their friendship with Pribula and/or their support for the original version of Act 93, the Court finds that Plaintiffs have satisfied the first element of a § 1983 First Amendment retaliation claim.

## B.    Retaliatory Action

Next, the Court must determine whether the Defendants responded to this protected activity with a retaliatory action that would deter an ordinary person from exercising their First Amendment rights.  The Plaintiffs note three allegedly retaliatory actions by Defendants. First, Plaintiffs argue that Pribula was "constructively discharged" from his position as Superintendent of Buildings and Grounds and Capital Projects/Construction Manager in November 2006.  Next, they argue that the Defendants rescinded an extension and did not renew Zarra's contract as a Network/Personal Computer Administrative Engineer in October of 2006.  And finally, they allege that Defendants purposefully deprived Micheletti of eighty-

eight thousand dollars ($88,000.00) in contractual entitlements when the board rescinded the original Act 93 proposal and subsequently did not allow him to postpone his retirement from May to June 2006.

While the Defendants do not dispute that Zarra did not have his contract renewed, that the Act 93 proposal was rescinded, and that the school board denied Micheletti's request to postpone his retirement, they do dispute Pribula's allegation that he was constructively discharged from his employment with the School District.  They argue that Pribula has not presented evidence that would allow a jury to conclude that the school board permitted conditions so unpleasant or difficult that a reasonable person would have felt compelled to resign.  *See Connors v. Chrysler Financial Corp.*, 160 F.3d 971, 974 (3d Cir. 1998) (identifying the test for determining when an employee is "constructively discharged"). Turning to the evidence that has been presented in the course of litigation, the Court notes that Pribula testified at his deposition as to a number of actions taken by Defendants that could support his argument that he was constructively discharged.  For example, he testified that his performance evaluations were done improperly (Pribula Deposition, Doc. 34, Ex. 13, at 43:01 - 46:05; 115:05-117:02), that his work hours changed and that he was required to work nights (*Id.* at 48:07-49:15; 102:10 - 103:22), that he was regularly mistreated at work by Defendant Bernardi (*Id.* at 51:01-51:09), that Defendant Valenti wanted to make his cellular phone records a matter of public record (*Id.* at 57:11-58:14), and that his employment with the School District caused harm to his professional reputation which resulted in extreme anxiety that ultimately led him to quit (*Id.* at 120:02-120:17).  The Court believes that these statements, made under oath, are sufficient to raise a factual question and may be sufficient for a jury to determine that Pribula was constructively discharged from

his position.  Accordingly, the Court finds that the Plaintiffs have satisfied their burden and have shown that there is, at a minimum, a genuine question of fact concerning whether Pribula suffered an action that may be deemed "retaliatory" and that would hinder an ordinary person from exercising his First Amendment rights.

### C.    Causation

Next the Court must consider whether Plaintiffs' protected activity was the cause of the school board's allegedly retaliatory action.

> Causation may be proved in various ways. A showing of "unusually suggestive" temporal proximity between the protected activity and the adverse action can be sufficient.  A plaintiff also can prove causation, despite a lack of suspicious temporal proximity, by coming forward with evidence of a pattern of antagonistic conduct against the plaintiff subsequent to his protected conduct. Lastly, the plaintiff can seek to prove causation by pointing to the record as a whole for evidence that suggests causation.

*Schlegel v. Koteski*, No. 07-4166, 2009 U.S. App. LEXIS 1083, at *11-*12 (3d. Cir. 2009) (citing  *Doe v. C.A.R.S. Protection Plus, Inc.*, 527 F.3d 358, 369 (3d Cir. 2008); *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920-21 (3d Cir. 1997)*; Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000)).  The Defendants in the current case argue that there is no temporal proximity between the alleged protected speech and the alleged retaliatory conduct.  In contrast, Plaintiffs argue that the retaliatory actions taken against Pribula, Zarra and Micheletti are unusually suggestive of retaliation.

While this case arises out of nearly twenty years of political activity surrounding the school board for the Wyoming Area School District, the November 2005 school board elections and subsequent seating of a "new" school board in December 2005 are particularly at issue here.  During the 2005 elections, the Plaintiffs openly campaigned for and attended

11

cocktail receptions supporting candidates who were, ultimately, not elected to the school board.  During this time, several advertisements criticizing Pribula's job performance were placed in local news papers by Defendants Lanunziata, Bolin, and Marianacci.  (Pribula Dep., Doc. 34, Ex. 30, at 84:24-86:21.)  Plaintiff Pribula further testifies that, in the months leading up to the 2005 elections, Defendants Sobeski and Valenti made disparaging public remarks about Pribula's job performance and efforts to be reimbursed for cell phone expenses incurred through his duties.  (*Id*. at 57:11-58:14, 64:11-66:09; Pribula Feb. 2, 2005 Letter to Bernardi, Doc. 30, Ex. 8.)   In December 2005 a "new board," which  included several members who were opposed by Plaintiffs during the November 2005 election, was seated.  Plaintiffs contend that it was shortly after this new board took over on December 15, 2005 that Plaintiffs began suffering retaliatory actions.

> ### 1.      Pribula

Patrick Pribula testified that, almost immediately following the seating of the new board, the length of his work day was altered, he was forced to work nights and holidays, he was denied compensation for some hours worked, he received phone calls late at night telling him to go lock various school facilities, and he began receiving negative comments on his performance evaluations.  (Defs.' Interrogatories Directed to Pl. Pribula, Doc. 34, Ex. 6, at ¶ 5; Pl. Pribula's Answer to Defs.' Interrogatories, Doc. 34, Ex. 7, at ¶ 5; Pribula Dep., Doc. 34, Ex. 30, at 115:12-116:02, 157:01-157:21.)  Pribula further testified that when the new board took control, he was removed from his position as a liaison for the ongoing building project at the school and was no longer included in meetings about the project. (Pribula Dep., Doc. 34, Ex. 13, at 36:12-37:21.)  Pribula testified that, at this point, the liaison and oversight roles that he previously held were assumed by Defendants Bernardi and Wall.

(*Id.* at 41:16-41:23.)  Approximately eleven months later, in November of 2006, Defendant Bernardi informed Pribula that compensatory time he had claimed would be denied.  (Pribula November 15, 2006 Letter to Bernardi, Doc. 34, Ex. 8.)

In the brief supporting their motion for summary judgment, the Defendants contend that Pribula is asking this Court to accept that the individual Defendants had knowledge of or somehow condoned a change in Pribula's working conditions as a result of the lawsuit Pribula filed nearly ten years earlier.  (Defs.' Br. in Supp., Doc. 28, at 8.)  Alternatively, the Defendants argue that Pribula is asking the Court to believe that the individual Defendants supported or allowed the changes in his working conditions due to his political support of outgoing board members.  (*Id.*)  Defendants have provided the Court with excerpts from depositions further suggesting that several of the individual Defendants were unaware of Pribula's political activities and that the changes in his employment and negative evaluations were a reaction to a general change in Pribula's demeanor.  In particular, the Court takes note of testimony provided by Raymond Bernardi stating that he had no recollection whether Pribula was either active or inactive during the 2005 school board election, that Pribula's attitude toward work changed in early 2006, and that in 2006 Pribula failed to follow through on mutually agreed upon directives .  (Attachments to Mot., Bernardi Dep. Excerpts, Doc 27.) Defendants have also provided deposition testimony from Defendant Marianacci.  In this testimony, Marianacci clearly states that he was not aware of Patrick Pribula's political activities and was not aware of any other members of the new board seated in December 2005 discussing Pribula's activities.  (Attachments to Mot., Marianacci Dep. Excerpts., Doc. 27.)  Marianacci further indicates in his testimony that he never heard any indications that

13

other board members wanted to retaliate or get "payback" against Pribula.  (*Id.*)

Reviewing the statements of facts and testimony provided, the Court finds that there is a genuine question of fact concerning whether the changes in Pribula's employment were made in retaliation for Pribula's activities that are protected by the First Amendment.  The testimony offered by Plaintiffs and Defendants differs drastically with respect to whether the individual Defendants possessed knowledge of either the earlier legal activity between Pribula and the School District or Pribula's political activities during the 2005 election.  Likewise, the provided testimony provides very different accounts for the reasons underlying the changes made to Pribula's duties, work schedule, and performance evaluations.  Since, based on the evidence currently before the Court, a reasonable jury could determine that Defendants did take retaliatory action against Pribula, the Court will not grant the Defendants motion for summary judgement on the basis of Defendants' argument that Pribula has not presented sufficient evidence in support of his First Amendment claims.

## 2.     Zarra

Plaintiff James Zarra also testifies that Defendants sought to retaliate against him during this same 2005-2006 period.  Zarra states that the basis for the alleged retaliation was his friendship with Patrick Pribula, along with the Defendants' mistaken belief that he hosted a cocktail party at Fox Hill Country Club supporting candidates that were not elected in the November 2005 school board elections. (Zarra Dep., Doc. 30, Ex. 4, at 38:4-38:10.)  Zarra further testified that Defendant DeAngelo told him at a breakfast meeting sometime in early 2006 that the school board needed to "send a message" by rescinding his contract.  (*Id*. at 44:4-47:13.)  Much of Zarra's testimony is based off of conversations he had with Sam

14

Marranca, who has also provided deposition testimony in this case.  In this testimony, Marranca stated that during the summer of 2006, he received a phone call from Defendant Sobeski telling him that Zarra was going to have some difficulties with his job and that there was nothing that Sobeski could do to help him.  (Marranca Dep., Doc. 30, Ex. 10, at 4:12-6:13.)  Marranca further testified that Sobeski told him that the reason for the adverse employment action was Zarra's association with Pribula and his involvement with the Fox Hill cocktail party.  (*Id.*)  Rose Randazzo, Zarra's ex-wife and Marranca's niece, also testified that she was present during this conversation and that Sobeski iindicated that the reasons for the contract action against Zarra were his friendship with Pribula and the cocktail function.  (Randazzo Dep., Doc. 34, Ex. 10, at 4:23-11:6.) Marranca also testified about a similar conversation that he had with Defendant Wall in the late summer of 2006 where Wall indicated that the school board planned to "dump" Zarra.  (Marranca Dep., at 6:14-8:21.) Marranca also mentioned another meeting in a restaurant where Defendants Bolin, Marianacci, and DeAngelo were present and indicated that Zarra's employment issues were due to his "hanging with [Pribula] all the time." (*Id.* at 9:1-10:25.)

In their brief supporting their motion for summary judgment, Defendants argue that Zarra has uncovered no evidence to suggest that his contract was not renewed for anything other than budgetary reasons.  (Defs.' Br. in Supp., Doc. 28, at 13.)  In particular, Defendants point to Defendant Antoinette Valenti's deposition testimony stating that at the time Zarra's contract was not renewed, the school board was reviewing the budget and

15

believed that money could be saved with respect to Zarra's particular position.[2]  (*Id.*)
Defendants further argue that Bernardi was not a board member, did not take part in the
decision to rescind Zarra's contract, and accordingly, cannot be held liable to Zarra for an
alleged civil rights violation.  (*Id.*)

Reviewing the statements of fact, the provided testimony speaking specifically to
Zarra's claims, and the record in this case as a whole, the Court finds that there is a genuine
question of fact as to whether the school board's decision to rescind Zarra's contract was
motivated by Zarra's association with Pribula and his participation in political activities during
the 2005 elections.  Taking the presented evidence in the light most favorable to Zarra as
a non-moving party, the Court believes that the testimony presented raises genuine
questions about the board's motivation for rescinding Zarra's contract.  In particular, the
Court takes note of the Zarra's deposition testimony, along with the testimony of Sam
Marranca, Rose Randazzo, and of Zarra himself detailing conversations where board
members stated that Zarra's relationship with Pribula, along with his attendance at a political
fundraiser, resulted in the board "sending a message" by rescinding Zarra's contract.
Accordingly, the Court finds that a reasonable jury could find that Plaintiff Zarra's First
Amendment rights were violated, and for this reason, will not grant Defendants' motion for
summary judgement with respect to Zarra on the basis of their' argument that he has not
presented evidence supporting his retaliation claim.

---

[2]

Although Defendants cite to Defendant Valenti's deposition transcript in their Brief in Support, neither
Plaintiffs nor Defendants have placed (or attempted to place) a copy of this transcript on file with the
Court.  Accordingly, the Court has been unable to verify that Defendant Valenti testified as stated
during her deposition.

The Court also takes note of Defendants' argument that Defendant Raymond Bernardi did not participate in the decision to rescind Zarra's contract. The Court observes few, if any, references to interactions between Zarra and Bernardi in the various deposition transcripts and other documents presented in this case. However, the documents presented to the Court in this case, when viewed in their entirety, paint a picture of a highly contentious relationship between the Plaintiffs and the Defendants, including Defendant Bernardi. Because the provided evidence suggests such an antagonistic relationship between all Plaintiffs and all Defendants, the Court believes that genuine questions of fact remain concerning what role or input Defendant Bernardi had or provided in the school board's decision to rescind Zarra's contract.

### 3. Micheletti

Plaintiff Robert Micheletti has also testified that Defendants retaliated against him in early 2006 due to his association with Patrick Pribula and because of his involvement in a "meet the candidates" cocktail function during the 2005 election campaign. (Micheletti Dep., Doc. 39, at 38:3-40:12, 57:13-57:22.) As a result, Micheletti alleges that the new school board rescinded the original (November 2005) Act 93 compensation plan, thereby depriving him of contractual entitlements in excess of eighty-eight thousand dollars ($88,000.00). Micheletti also alleges that the school board denied his request to extend his retirement date by one month, something that the board had allowed other employees to do.

Defendants argue that the Plaintiffs are asking this Court to accept that the school board rescinded a proposal affecting every administrator within the Wyoming Area School District in order to retaliate against Micheletti for his friendship with Pribula and for attending

one political function for opposition school board members.  (Defs.' Br. in Supp., Doc. 28, at 11.)  Defendants further argue that Micheletti has not provided any evidence that the board was aware of his friendship with Pribula or his political activities or that either of these factors motivated the board to either revise the Act 93 proposal or refuse Micheletti's request to extend his retirement.  In particular, Defendants cite to Defendant Bernardi's deposition testimony stating that the Defendants were unaware of Micheletti's political activities.  (Attachments to Mot., Bernardi Dep. Excerpts, Doc 27.)  They also argue that Micheletti has failed to present any evidence or testimony indicating that Bernardi or any of the individual Defendants on the school board took any action against him.

The Court, however, takes note of Micheletti's deposition testimony where he states that he was the only person within the School District that was impacted by the changes in the version of the Act 93 plan adopted in December 2005.  (Micheletti Dep., Doc. 39, at 57:13-57:22.) The Court further notes Micheletti's testimony that the Defendants were aware of Micheletti's political activities and placed his name in newspaper advertisements saying that he was a "yes man" for the opposition candidates who had "snuck in" a six thousand dollar ($6,000.00) raise for Micheletti.  (*Id.* at 42:5-42:15.)  Micheletti also testified that Defendant Bernardi commented on Micheletti's contact with certain school board members and sent Micheletti correspondence discussing this contact.  (*Id.*)  Moreover, Micheletti testified that Defendant Sobeski indicated to him that some of the employment actions taken by the school board concerning Micheletti were "just politics."  (*Id.* at 78:16-79:7.)

Reviewing the statements of fact, the provided testimony speaking specifically to Micheletti's claims, and the record in this case as a whole, the Court finds that there is a

18

genuine question of fact that would allow a reasonable jury to determine that the Defendants retaliated against Micheletti due to his friendship with the other Plaintiffs and his attendance at political events.  He has stated under oath that the Defendants mentioned him by name in election-time advertisements, calling him a "yes man" and questioning his salary, and he further testified that he was the only person within the School District that was negatively impacted by the school board's decision to revise Act 93.  The Court, accordingly, finds that there is a genuine question of fact concerning the Defendants' motivations to both revise the Act 93 proposal and to deny Micheletti's request to extend his retirement.  Thus, the Court will not grant Defendants' motion for summary judgement with respect to Micheletti on the basis of Defendants' argument that he has failed to present sufficient evidence supporting a First Amendment retaliation claim.

## II.    *Monell*

As discussed in the previous section, questions of fact remain as to whether Plaintiffs Pribula and Zarra suffered a violation of their First Amendment rights.  Accordingly, the Court now turns to Defendants' argument that Defendant Wyoming Valley School District is entitled to judgment as a matter of law since Plaintiffs have failed to set forth a District policy or custom that led to a constitutional harm.  In *Monell v. Department of Social Services of the City of New York*, the United States Supreme Court held that a municipality can be sued directly under § 1983 when action taken pursuant to a municipal policy or custom causes a constitutional tort.  *Monell*, 436 U.S. at 691.  Municipalities, however, cannot be held liable solely because they employed a tortfeasor.  *Id.*  "Instead, it is when execution of a government's *policy or custom*. . . inflicts the injury that the government as an entity is

responsible under § 1983." *Id.* at 694 (emphasis added).  Accordingly, if the Court is unable to determine that a School District policy or custom was the cause of the alleged violation to Plaintiffs' First Amendment rights, then the Plaintiffs' claims against the School District cannot proceed.  *See City of Canton v. Harris*, 489 U.S. 378 (1989).

Plaintiffs argue that they have asserted sufficient evidence to show that the School District engaged in a policy that supported discrimination by individual school employees against individuals who engaged in First Amendment protected activity.  (Pls.' Br. in Opp., Doc. 35, at 16.)  According to this argument, decisions to retaliate against the Plaintiffs were made as a joint effort of the entire school board and the District's intent to retaliate is evidenced by statements made by Defendants Sobeski and Wall.  (*Id.* at 16-17.)

After reviewing all of the facts brought to the Court's attention by Plaintiffs in opposition to Defendants' motion for summary judgment, the Court finds that the alleged retaliatory actions taken by the Defendants in this case were discrete, isolated incidents and not the product of a policy, practice or custom of the Wyoming Area School District.  For this reason, the Court will grant Defendants motion for summary judgment with respect to the Wyoming Area School District and will dismiss the School District from this case.

## III.   Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 172 L. Ed. 2d 565, 573 (U.S. 2009) (quoting *Harlow*, 457 U.S. at 818).  "Because qualified immunity is 'an immunity from suit rather than a mere defense to liability . . . it is effectively

lost if a case is erroneously permitted to go to trial.'" *Id.* (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).  In *Saucier v. Katz*, the Supreme Court established a two-step process for courts examining the qualified immunity of government officials.  533 U.S. 194 (2001).  "First, a  court must decide whether the facts that a plaintiff has alleged (*see* Fed. Rules Civ. Proc. 12(b)(6), (c)) or shown (*see* Rules 50, 56) make out a violation of a constitutional right." *Pearson*, 172 L. Ed. 2d, at 573 (citing *Saucier*, 533 U.S., at 201).  "Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct."  *Id.*  Recently, in *Pearson*, the Supreme Court held that "while the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory."  *Pearson*, 172 L. Ed. 2d, at 576.

This Court, in its July 16, 2007 Memorandum and Order (Doc. 12), has already determined that Plaintiffs have sufficiently alleged a violation of a constitutionally protected right.  The Court has, as detailed in the previous sections of this Memorandum, also found that legitimate questions of fact remain concerning whether Plaintiffs actually suffered the alleged violation.  Having, thus, already completed the first step of the *Saucier* qualified immunity test, the Court now considers whether the Plaintiffs' right to be free from retaliation was clearly established at the time of the Defendants' alleged misconduct.

Each of the individual Defendants in this case  is entitled to qualified immunity unless their conduct violated a clearly established constitutional right.  *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Id.*, at 640. "The qualified immunity doctrine gives ample room for mistaken judgements by protecting

all but the plainly incompetent or those who knowingly violate the law." *Berg v. County of Allegheny*, 219 F.3d 261, 272 (3d Cir. 2000).  However, "a reasonably competent public official should know the law governing his conduct' unless [he] can either demonstrate extraordinary circumstances or that [he] 'neither knew nor should have known' about the legal right in question." *Gruenke v. Seip*, 225 F.3d 290, 299 (3d Cir. 2000) (quoting *Harlow*, 457 U.S., at 818-19).

In the current case, Defendants do not argue that the First Amendment rights to freedom of speech and to petition the government for a redress of grievances are not clearly established.  Instead, they simply argue that Plaintiffs have failed to identify any evidence that the individual Defendants knowingly violated the law when taking the allegedly retaliatory actions at issue in this case.  (Defs.' Reply, Doc. 37, at 10.)  Plaintiffs have alleged that the individual school board members retaliated against them for (1) their support of political candidates opposing the Defendants, (2) previously filing a lawsuit against the School District, and (3) associating with a person involved in political discourse that was adverse to the interests of the individual Defendants.  This is the type of  "lawful political speech at the core of what the First Amendment is designed to protect." *Virginia v. Black*, 538 U.S. 343, 365 (2003)

Courts within the Middle District of Pennsylvania have previously stated, that the law has long been clearly established that public employees, such as Plaintiffs can not be retaliated against for exercising their rights under the First Amendment. *Cipriani v. Lycoming County Hous. Auth.*, 177 F. Supp. 2d 303, 327 (M.D. Pa. 2001) (McClure, J.)  (citing *Baldassare v. New Jersey*, 250 F.3d 188, 201 (3d Cir. 2001) Thus, at the time of Defendants'

alleged conduct, the law was clearly established that Defendants could not retaliate against the filing of a lawsuit or for Plaintiffs' political speech and no reasonable government official in Defendants' position could believe that retaliating against Plaintiffs by taking adverse employment-related actions was appropriate conduct. *Id.* at 328.  As the First Amendment law is clearly established, and since the individual Defendants have not demonstrated any extraordinary circumstances or that they neither knew nor should have known about Plaintiffs' First Amendment rights, the individual Defendants are not entitled to qualified immunity and the Court will not grant their motion for summary judgment on these grounds.

## IV.    Legislative Immunity

Defendants argue that the passage of the revised Act 93 proposal in December 2005 was a legislative act affecting administrative employees within the School District .  "[L]ocal legislators, like federal and state legislators, are absolutely immune from liability for their legislative activities."  *In re Montgomery County*, 215 F.3d 367, 376 (3d Cir. 2000) (citing *Bogan v. Harris*, 523 U.S. 44, 49 (1998); *Aitchison v. Raffiani*, 708 F.2d 96 (3d Cir. 1983)). "To be legislative, however, the act in question must be both substantively and procedurally legislative in nature." *Id.* (citing *Carver v. Foerster*, 102 F.3d 96, 100 (3d Cir. 1996)).  "An act is substantively legislative if it involves 'policy-making of a general purpose' or 'line-drawing.' It is procedurally legislative if it is undertaken 'by means of established legislative procedures.'" *Id.* (citing *Carver*, 102 F.3d, at 100).

In the current case, there is no dispute that, in December 2005, a properly elected school board voted to adopt the revised Act 93 proposal.  While the Plaintiffs argue that the revisions to the Act 93 proposal were pursued as part of a larger program of retaliation by

23

Defendants, the Court finds that the presented evidence shows that the version of Act 93 adopted in December 2005 was a general policy, applicable to all administrative staff within the Wyoming Area School District.  In other words, the school board's vote had prospective implications reaching well beyond Plaintiff Micheletti's particular situation and was legislative in substance.  *See Brogan*, 523 U.S. at 56.  Thus, the individual Defendants are entitled to legislative immunity with respect to the December 2005 adoption of the revised Act 93 proposal.  The Court will, accordingly, grant Defendants motion for summary judgment with respect to those claims brought by Plaintiff Micheletti involving the school board's adoption of the revised Act 93 compensation plan.

The Court notes, however, that Defendants' arguments contained in their Brief in Support are presented with the implicit understanding that all of the claims in this case that are relevant to Micheletti involve the school board's action on Act 93.  (See Defs.' Br. in Supp., Doc 28, at 18-19.)  The Court believes that this is an inaccurate over-simplification of Micheletti's claims that ignores the arguments and facts concerning the school board's decision to deny Micheletti's request to postpone his retirement.  This decision did not reach beyond the "particular occupant of the office," was not an "integral step" in the legislative process, and thus, was an action of an executive or administrative nature not entitled to absolute immunity.  *In re Montgomery County*, 215 F.3d at 376-77 (quoting *Brogan* 523 U.S. at 55-56).  Accordingly, the Court stresses that it is granting summary judgment with respect to *only* those claims brought by Micheletti that involve the Act 93 proposal.  Based on the questions of fact detailed in the prior sections of this Memorandum and the absence of legislative immunity, the Court will deny Defendants' motion for summary judgment with

24

respect to Micheletti's claims arising out of the school board's denial of his request to postpone his retirement date.

## V.    Punitive Damages

Punitive damages may be awarded in a case brought pursuant to 42 U.S.C. § 1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Defendants now argue that "it is apparent at the close of discovery that Plaintiffs have failed to adduce evidence of reckless conduct sufficient to support a punitive damage award." (Defs.' Br. in Supp., Doc 28, at 19.)  Plaintiffs, in contrast, argue that "[i]t is clear that the defendants have engaged in reckless conduct that shows that they had an evil motive.  The defendants intentionally engaged in the acts with the intention to harm the plaintiffs."  (Pls.' Br. in Opp., Doc. 35, at 20.)

Viewing the factual evidence presented in the light most favorable to the Plaintiffs as the non-moving party, the Court finds that the Defendants have failed to show that a reasonable jury, when presented with this evidence, would be unable to find that the individual Defendants acted with evil intent or callous indifference to Plaintiffs' First Amendment rights. As already discussed, Plaintiffs have provided sufficient evidence to raise real questions of fact as to whether the individual Defendants retaliated against Plaintiffs for participating in activities protected by the First Amendment.  The Court believes that this evidence raises a similar questions as to whether the Defendants acted with either the intent or the indifference required for a jury to assess punitive damages.  For this reason, the Court will deny the Defendants' motion for summary judgment with respect to Plaintiffs' pursuit of

punitive damages.

## CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment (Doc. 25) will be granted in part and denied in part.  First, the Court will grant Defendants' motion with respect to the Wyoming Area School District because Plaintiffs have failed to set forth a School District policy or custom that led to a constitutional harm as required by the Supreme Court's decision in *Monell* and subsequent cases.  Second, the Court will grant Defendants' motion with respect to those claims involving the Defendants' December 2005 decision to adopt the revised Act 93 administrative compensation plan since the Defendants' actions were legislative in nature and entitled to complete liability.  In all other respects, the Court will deny Defendants' motion.

An appropriate Order follows.


February 20, 2009                               /s/ A. Richard Caputo
Date                                         A. Richard Caputo
                                               United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

PATRICK J. PRIBULA, ROBERT
MICHELETTI and JAMES G. ZARRA,

     Plaintiffs,

         v.

WYOMING AREA SCHOOL DISTRICT, et
al.,

     Defendants.

CIVIL ACTION NO. 3:06-CV-2039

(JUDGE CAPUTO)

### <u>ORDER</u>

**NOW**, this  20th  day of February, 2009, **IT IS HEREBY ORDERED** that Defendants Wyoming Area School District, Raymond Bernardi, Anthony Sobeski, Antoinette Valenti, John Lanunziata, Nick DeAngelo, John Bolin, Jerry Wall, and John Marianacci's Motion for Summary Judgment (Doc. 25) will be **GRANTED** in part and **DENIED** in part as follows:

(1)    Defendants' Motion is **GRANTED** with respect to all claims against Defendant Wyoming Area School District, and the Wyoming Area School District is hereby **DISMISSED** from this case.

(2)    Defendants' Motion is **GRANTED** with respect to all claims against Defendants Raymond Bernardi, Anthony Sobeski, Antoinette Valenti, John Lanunziata, Nick DeAngelo, John Bolin, Jerry Wall, and John Marianacci involving the December 2005 school board action adopting a revised Act 93 Administrative Compensation Plan.

(3)     Defendants Motion is **DENIED** with respect to all other claims.


 /s/ A. Richard Caputo
A. Richard Caputo
United States District Judge