# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PATRICK J. PRIBULA; ROBERT MICHELETTI; and JAMES G. ZARRA, <br><br> Plaintiffs, <br><br> v. <br><br> WYOMING AREA SCHOOL DISTRICT; RAYMOND BERNARDI; ANTHONY SOBESKI; ANTOINETTE VALENTI; JOHN LANUNZIATA; NICK DEANGELO; JOHN BOLIN; JERRY WALL; and JOHN MARIANACCI, <br><br> Defendants. | CIVIL ACTION NO. 3:06-CV-2039 <br><br> (JUDGE CAPUTO) |

## **MEMORANDUM**

Presently before the Court are two motions: (1) Defendants' Motion for a New Trial and/or for Judgment as Matter of Law and/or to Amend or Alter Judgment (Doc. 85); and (2) Plaintiffs' First Motion for Attorney Fees (Doc. 95). Because there was a significant error of law when the jury was instructed that friendship was a protected activity under the First Amendment, and because this error was prejudicial to the Defendants, I will grant their motion for a new trial. In light of this ruling, I need not address Defendants' remaining arguments. Plaintiffs' motion for attorney fees will be denied as moot.

This Court has jurisdiction over the action according to 28 U.S.C. § 1331 (federal question jurisdiction).

**BACKGROUND**

**I.    Factual Background** [1]

Evidence was presented at trial that supported the following:

Plaintiffs are Patrick Pribula ("Pribula"), James Zarra ("Zarra"), and Robert Micheletti ("Micheletti") were all employees of the Wyoming Area School District. Pribula was hired in 2004 as superintendent of buildings and grounds and as construction manager. (Trial Tr., vol. 1, 65, 68.) Zarra was hired in 2001 as a network engineer and personal computer administrator. (Trial Tr., vol. 3, 37.) Micheletti was hired in December 1997 as an assistant principal. (Trial Tr., vol. 2, 86.) He held several positions in the district, ultimately holding a co-principalship of the district's secondary center in July 2005. (Trial Tr., vol. 2, 87.)

Defendants Antoinette Valenti ("Valenti"), John LaNunziata ("LaNunziata"), Nick DeAngelo ("DeAngelo"), John Bolin ("Bolin"), Jerry Wall ("Wall"), and John Marianacci ("Marianacci") were members of the Wyoming Area school board following the 2005 election. (Trial Tr., vol. 2, 7.) Defendant Raymond Bernardi ("Bernardi") was the superintendent of the Wyoming Area School District at all relevant times. (Trial Tr., vol. 1, 74.)

---

[1] The trial transcript in this case is docketed as six separate items, and will be referred to in this Memorandum as follows: (1) proceedings on July 27, 2009, Doc. 103 ("Trial Tr., vol. 1"); (2) proceedings on July 28, 2009, Doc. 104 ("Trial Tr., vol. 2"); (3) proceedings on July 29, 2009, Doc. 105 ("Trial Tr., vol. 3"); (4) proceedings on July 30, 2009, Doc. 106 ("Trial Tr., vol. 4); (5) proceedings in the morning of July 31, 2009, Doc. 100 ("Trial Tr., vol. 5"); (6) proceedings in the afternoon of July 31, 2009, Doc. 111 ("Trial Tr., vol. 6").

In 2004, the Wyoming Area school board consisted of Tom Badmonski, Bobby Orlando, Mary Lou Pisano, Donny Lloyd, Gene Thomas, Jake Sobeski,[2] and Defendants DeAngelo and Valenti. (Trial Tr., vol. 1, 73.) The "minority" of the board included Mr. Sobeski and Defendant Valenti . (Trial Tr., vol. 1, 73.) The Plaintiffs supported the "majority board" in place prior to the 2005 election including Mr. Orlando and Mrs. Pisano. (Trial Tr., vol. 1, 119; Trial Tr., vol. 2, 3.) They attended political rallies and passed out postcards. (Trial Tr., vol. 1, 118.) Pribula and Micheletti put up yard signs together. (Trial Tr., vol. 1, 118.) They all attended a fund raiser at Fox Hill County Club. (Trial Tr, vol. 3, 45-46.)

Plaintiffs also shared a friendship. (Trial Tr., vol. 2, 103.) They shared common friends and common political ideals. (Trial Tr., vol. 2, 104.) Zarra and Pribula had been friends for close to twenty (20) years. (Trial Tr., vol. 3, 41.) Pribula and Zarra worked together on their own time to construct a field hockey field for the district. (Trial Tr., vol. 1, 131.) Micheletti and Pribula vacationed with members of the former majority. (Trial Tr., vol. 2, 104.) They also had lunch together many times. (Trial Tr., vol. 2, 104.) Micheletti and Zarra were also friends and had lunch together. (Trial Tr., vol. 3, 41.)

After the 2005 election, the majority control shifted to align itself with Sobeski and Valenti. (Trial Tr., vol. 1, 73.) Defendants Wall, Marianacci, Bolin, and LaNunziata were added to the Board. (Trial Tr., vol. 2, 7.) After being sworn in, things changed for each of the Plaintiffs. Plaintiffs argued that they were retaliated against by the Defendants for

---

[2] Sobeski was also a Defendant in this litigation, but was dismissed during trial because he was deceased and Plaintiffs failed to amend their complaint to name his estate. (Trial Tr., vol. 4, 301.)

3

Pribula's prior lawsuit,[3] for their political activities for the former board members, and for their friendship with each other. Pribula argued the retaliation included: his removal as construction manager (Trial Tr., vol. 1, 74,; being forced to move out of his office and place his desk in the supply cage (Trial Tr. 1, vol. 1, 82), being forced to work difficult hours and over holidays (Trial Tr., vol. 1, 84, 101), and being given negative performance reviews (Trial Tr., vol. 1, 85-86). Pribula argued that these actions forced him to resign. Zarra argued that the retaliation against him included: having more dictated hours (Trial Tr., vol. 3, 50), being forced to find a replacement at no cost to the district for each vacation day he took (Trial Tr., vol. 3, 51), rescinding his contract extension (Trial Tr., vol. 3, 48), and being offered his same position with a $20,000 reduction in salary (Trial Tr., vol. 3, 52). Micheletti argued that the retaliation against him included the board's refusal to permit him to extend his retirement date and return from sick leave so that he could "leave with some dignity." (Trial Tr., vol. 2, 92-93.)

A factual dispute existed as to the knowledge each Defendant had of the Plaintiffs' political and social conduct. Plaintiffs argued that the Defendants knew of Pribula and Micheletti's political activities because they were named in some of the Defendants' political advertisements. (Trial Tr., vol. 1, 119.) DeAngelo told Zarra his trouble with the school board was caused by his friendship with Pribula, and by his political activities raising funds for the former board members' campaigns. (Trial Tr., vol. 3, 45.) It was no

---

[3]Pribula also previously worked as the superintendent of buildings and grounds for the Wyoming Area School District from 1991 to 1997. (Trial Tr., vol. 1, 61.) After Pribula's contract was not renewed with the district, he filed a lawsuit in federal court against the school district. (Trial Tr., vol. 1, 65.) Defendants Valenti and LaNunziata were also parties to that litigation. (Trial Tr., vol. 1, 65.)

secret that the Plaintiffs were friends.  (Trial Tr., vol. 2, 104.)  Some of the Defendants testified that they were unaware of the Plaintiffs' friendship or political activity.  (Trial Tr., vol. 3, 215, 217 (Marianacci); Trial Tr., vol. 4, 65 (Bolin); Trial Tr., vol. 4, 92 (DeAngelo).)  Others testified that they knew of the friendships.  (Trial Tr., vol. 4, 114 (Wall); Trial Tr., vol. 4, 245 (Bernardi); Trial Tr., vol. 5, 23-24 (Valenti).)  Similarly, there was conflicting evidence with respect to knowledge of the Plaintiffs' political activity.  (Trial Tr., vol. 4, 242 (Bernardi knew of Pribula's political involvement); Trial Tr., vol. 5, 10-11 (Wall did not know of Micheletti's); Trial Tr., vol. 5, 37-38 (LaNunziata did not know of Micheletti's).)

## II.     Procedural Background

Plaintiffs filed this action on October 17, 2006.  (Doc. 1.)  On February 20, 2009, this Court issued a Memorandum and Order granting summary judgment in favor of the Defendants on all of Plaintiffs' claims, except the claims under § 1983 for violations of the Plaintiffs' First Amendment rights.  (Doc. 40.)  The case was tried before a jury starting on July 27, 2009.  (Doc. 103.)  The jury returned a verdict in favor of each of the Plaintiffs against all of the Defendants, and  judgment was entered against the Defendants on August 3, 2009.  (Doc. 81.)  On August 13, 2009, Defendants filed the motion for a new trial presently before this Court.  (Doc. 85.)  This motion has been fully briefed by both parties, and is now ripe for disposition.

## LEGAL STANDARD

Under Rule 59(a), motions for a new trial must be filed within ten days of the date the judgment was entered.  *See* FED. R. CIV. P. 59.  The decision to grant a new trial is left to the sound discretion of the trial judge.  *See Blackiston v. Johnson,* No. 91-5111, 1995

WL 563834, at *1 (E.D. Pa. 1995), *aff'd* 91 F.3d 122 (3d Cir. 1996), *cert. denied* 519 U.S. 953 (1996). Courts have granted motions for a new trial where: (1) there is a significant error of law, to the prejudice of the moving party; (2) the verdict is against the weight of the evidence; (3) the size of the verdict is against the weight of the evidence; or (4) counsel engaged in improper conduct that had a prejudicial effect on the jury. *See Maylie v. Nat'l R.R. Passenger Corp.,* 791 F. Supp. 477, 480 (E.D. Pa.), *aff'd* 983 F.2d 1051 (3d Cir. 1992). Where the evidence is in conflict and subject to two or more interpretations, the trial judge should be reluctant to grant a new trial. *See Klein v. Hollings,* 992 F.2d 1285, 1295 (3d Cir. 1993).

## DISCUSSION

**I.     Jury Instructions on First Amendment Protected Activity**

Defendants argue that this Court committed an error of law when it instructed the jury that the Plaintiffs' friendship was a protected activity under the First Amendment's right of association. For any error of law the moving party must demonstrate that there was a significant error of law, and that this error was prejudicial. *See Maylie v. Nat'l R.R. Passenger Corp.,* 791 F. Supp. 477, 480 (E.D. Pa.), *aff'd* 983 F.2d 1051 (3d Cir. 1992). Trial errors are considered harmless when "it is highly probable that the error did not affect the outcome of the case." *McQueeney v. Wilmington Trust Co.*, 779 F.2d 916, 917 (3d Cir.1985). A new trial should be granted "only if the instruction was capable of confusing and thereby misleading the jury." *Cooper Distributing Co., Inc. V. Amana Refrigeration, Inc.*, 63 F.3d 262, 275 (3d Cir. 1995).

6

As a preliminary matter, objections to jury instructions and verdict slips are waived if they are not raised by the time the jury retires for its deliberations. FED. R. CIV. PRO. 51; *Neely v. Club Med Mgmt. Servs., Inc.*, 63 F.3d 166, 200 (3d Cir. 1995). "[T]o preserve an issue for appeal, counsel must state 'distinctly the matter objected to and the grounds of the objection.'" *Smith v. Borough of Wilkinsburg*, 147 F.3d 272, 277 (3d Cir. 1998) (quoting FED. R. CIV. P. 51). While Defendants' counsel failed to provide any case law or other authority for this argument, counsel clearly objected to the instruction during the jury instruction charge conference, and thus they have not waived this argument. (Trial Tr., vol. 5, 85-89.) Therefore, I must consider whether there was a significant error of law, and whether any error was prejudicial to the Defendants.

A. Significant Error of Law

Defendants argue that this Court committed a serious error of law when it instructed the jury on the first prong of First Amendment retaliation. This Court instructed the jury that the following constituted "protected activities" under the First Amendment:

> Mr. Pribula's lawsuit against the Wyoming Area School Board in 1997 is protected activity. Mr. Pribula, Mr. Micheletti and Mr. Zarra's political activities, prior to the 2005 Wyoming Avenue Area School Board elections, including attendance at cocktail parties, mailing post cards on behalf of candidates, general word of mouth support for the Plaintiffs' chosen candidates in office is protected activity. Plaintiffs Pribula, Micheletti and Zarra's friendship and association with each other, before and after the 2005 Wyoming Area School Board elections is protected activity.

(Trial Tr., vol. 6, 22.) Defendants argue that this third instruction described the right of association too broadly to include purely social friendships.

7

While the right of association is not found explicitly in the text of the Constitution, the Supreme Court has found that this right is guaranteed "as an indispensable means of preserving other individual liberties." *Roberts v. United States Jaycees*, 468 U.S. 609, 618 (1984). "Two sometimes overlapping types of protected association have been recognized: associations founded on intimate human relationships in which freedom of association is protected as a fundamental element of liberty, and associations formed for the purpose of engaging in activities protected by the first amendment, such as the exercise of speech, assembly, and religion." *Rode v. Dellarciprete*, 845 F.2d 1195, 1204 (3d Cir. 1988) (citing *Roberts*, 468 U.S. at 617-18). "Only relationships 'distinguished by such attributes as relative smallness, a high degree of selectivity in decisions to begin and maintain the affiliation, and seclusion from others in critical aspects of the relationship' are likely to implicate protection." *Id.* at 1204-04 (quoting *Roberts*, 468 U.S. at 620).

The evidence at trial supported Plaintiffs' claim that at least a portion of their conduct was protected under the right of association. There is no question that the Plaintiffs' friendship was not protected under the sphere of intimate human relationships. In *Rode*, the Third Circuit Court of Appeals held that even a relationship with a brother-in-law where the two were "good friends" failed to establish an intimate human relationship. *Rode*, 845 F.2d at 1205. Other Courts in this Circuit who have considered even "good" work-related friendships have found that they fail to meet the constitutional threshold for intimate relationships. *Martinez v. Marion*, 2007 U.S. Dist. LEXIS 44421, at *11-12 (E.D. Pa. June 19, 2007). At least a portion of Plaintiffs' friendship could, however, reasonably be considered under the second type of protected association. There was evidence presented at trial that the Plaintiffs participated in political activity together and shared

8

political ideals. (Trial Tr., vol. 1, 118 (Plaintiffs attended rallies, passed out post cards, put up signs); Trial Tr., vol. 2, 103 (Plaintiffs shared political ideals).) There was also, however, significant evidence that they shared a relationship beyond the political activity. (Trial Tr., vol. 1, 138 (Pribula and Zarra constructed field hockey field); Trial Tr., vol. 2, 107 (Micheletti vacationed with Pribula); Trial Tr., vol. 3, 41,44 (Zarra friends with Micheletti through work, friends with Pribula more than twenty (20) years).) Only the portions of their relationship for the purpose of supporting their other expressive conduct, such as their political activity, would be protected by the right of association. The general social or even charitable conduct would not be protected. *See Pi Lambda Phi Fraternity, Inc. V. Univ. of Pittsburgh*, 229 F.3d 435, 444 (3d Cir. 2000) ("a few minor charitable acts do not alone make a group's association expressive").

    The significant error in this Court's instruction was that it delineated between the political activity of the Plaintiffs and their friendship. This incorrectly implied that the Plaintiffs had a protected right of association for the purely social aspects of their relationships. This Court also instructed the jury that their friendship "before and after" the election was protected, again suggesting that their activities were protected after all expressive conduct was over. Plaintiffs do not contest that it was a significant error to give this instruction, only that the error was harmless because the evidence presented demonstrated that their relationship was a protected, political one. (Pl.'s Br. in Opp'n 24, Doc. 115.) I find that the instruction given by this Court was a significant error of law because it lead the jury to believe that the right of association protected even the purely social aspects of Plaintiffs' association with one another.

9

B. Prejudice

Defendants next argue that this erroneous instruction as to the right of association created prejudice against them because it permitted the jury to find liability under a theory not permitted by law. To establish a First Amendment retaliation claim, a plaintiff must prove: "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Independence Twp.,* 463 F.3d 285, 296 (3d Cir. 2006). The instruction as to constitutionally protected conduct was central to the Plaintiffs' case. The Defendants were prejudiced by the erroneous instruction in two ways.

First, the Defendants were prejudiced because the erroneous instruction permitted the jury to bypass important factual disputes in the evidence. In *Bennis v. Gable*, 823 F.2d 723 (3d Cir. 1987), there was a factual dispute whether the plaintiffs had engaged in certain activity that was protected under the First Amendment. *Id.* at 729. The Third Circuit Court of Appeals held that a new trial was appropriate after the district court erred by instructing the jury that the plaintiffs' conduct was protected, rather than properly allowing the jury to first resolve the underlying factual issues. *Id.* at 725, 730. The Court of Appeals also noted, in dicta, that the instruction harmed the defendants because it could have lead the jury to conclude that it "need not focus on and sift the evidence pertaining to the defendants' knowledge" of the plaintiffs' actions. *Id*. I find this same concern is evident in this case. Like in *Bennis*, the error here could have lead the jury to bypass critical factual disputes, such as whether each of the Defendants knew of the Plaintiffs' protected activities. To find a causal link between the protected conduct and the

retaliation, the jury needed to find that each Defendant knew of each Plaintiff engaged in protected activity. Using the instructions given at trial, jury needed only to decide that each Defendant knew of Pribula's lawsuit, the Plaintiffs' expressive conduct, or their friendship. There is a serious risk that if the jury found a Defendant knew of the Plaintiffs' friendship, then it did not further consider that Defendant's knowledge as to the other two. The jury would then have inappropriate disregarded the defenses raised by several of the Defendants that they did not know of the Plaintiffs' expressive conduct.

Second, the Defendants were prejudiced because the instruction permitted a finding of liability and an award of damages based upon an improper legal theory. After the erroneous instruction was given, the jury could have found that Defendants' conduct was in retaliation for Pribula's lawsuit, the Plaintiffs' political activity, for their friendships, or for any combination of the three. The verdict form did not require the jurors to specify under which theory or theories they awarded liability. There is no way to determine if the jurors found liability based the impermissible theory that the Defendants retaliated against the Plaintiffs because of their friendship. And even if the jury found retaliation against the Plaintiffs for both protected and unprotected conduct, there is no way to determine what portion of the damages awarded was based upon retaliation against the Plaintiffs' social friendships. *See Gros v. Port Washington Police Dist.*, 944 F.Supp. 1072, 1082 (E.D. N.Y. 1996) (granting new trial where jury instructions permitted recovery for protected and unprotected speech and the verdict form did not clarify what portion of the damages was awarded for each violation).

Plaintiffs argue that the Defendants mischaracterize the evidence presented at trial and that the case was about the Plaintiffs' politics and their political friendship. (Pl.'s Br.

11

in Opp'n 24, Doc. 115.)  Contrary to Plaintiffs' argument, there was significant evidence at trial discussing the Plaintiffs' friendship beyond their political activities.  (Trial Tr., vol. 1, 138 (Zarra and Pribula constructed field hockey field); Trial Tr., vol. 2, 103 (Micheletti friends with Pribula and Zarra, shared common friends); *Id.* 107 (Micheletti vacationed with Pribula); Trial Tr., vol. 3, 41 (Zarra friends with Micheletti through work); *Id.* at 42 (Zarra friends with Pribula for close to twenty (20) years); *Id.* at 47(distinguishing between Zarra's political activity and his friendship with Pribula); Trial Tr., vol. 4, 36 (same).)  The discussion during the charge conference, and each party's closing argument, also illustrates the central role the friendships played at trial.  (Trial Tr., vol. 5, 86 ("The Court: We've been talking about [friendship and association] the whole trial" when the Defendants objected to the friendship instruction); Trial Tr., vol. 6, 4 ("In this country, believe it or not, you can actually choose who your friends are. . . ."); *Id.* 8 (discussing them as friends and then as political allies); *Id.* 11-12 (discussing link between friendship and the adverse employment actions).  There was extensive evidence of the Plaintiffs' social relationships beyond their political conduct.

Plaintiffs also argue that there was sufficient evidence to support the jury's finding of retaliation for protected conduct.  While Plaintiffs are correct that sufficient evidence was presented that the Plaintiffs were mistreated for their protected activities, that does not mean that there was no prejudice.  Even with the permissible theory of liability before them, this Court's instruction also allowed the jury to find liability for retaliation against the unprotected friendships.  As stated above, because the verdict form did not inquire into what conduct was the cause of the retaliation, it is impossible to determine that the jury did not follow the erroneous instruction on the right of association.

12

Because the erroneous instructions implied that social friendships were protected under the First Amendment's right of association, and because there was sufficient evidence presented at trial to create a risk that the jury found liability based upon retaliation for this unprotected conduct, I find that the Defendants were prejudiced by the instruction. Defendants' motion for a new trial will be granted.

## II. Remaining Arguments

In light of the above conclusion, I need not address the remaining arguments raised by the Defendants. Similarly, Plaintiffs' motion for attorneys fees is also moot because a new trial will be granted.

## CONCLUSION

The Court erroneously instructed the jury, suggesting that the First Amendment right of association protected social friendships. This was prejudicial to the Defendants, because there was sufficient evidence presented at trial to create a risk that the jury found liability based upon retaliation for this unprotected conduct. Because this erroneous theory could have been the basis of their verdict, I will grant Defendants' motion for a new trial. An appropriate order follows.

| April 7, 2010 | /s/ A. Richard Caputo |
|---|---|
| Date | A. Richard Caputo |
| | United States District Judge |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PATRICK J. PRIBULA; ROBERT MICHELETTI; and JAMES G. ZARRA, | CIVIL ACTION NO. 3:06-CV-2039 |
| Plaintiffs, | |
| v. | (JUDGE CAPUTO) |
| WYOMING AREA SCHOOL DISTRICT; RAYMOND BERNARDI; ANTHONY SOBESKI; ANTOINETTE VALENTI; JOHN LANUNZIATA; NICK DEANGELO; JOHN BOLIN; JERRY WALL; and JOHN MARIANACCI, | |
| Defendants. | |

## ORDER

**NOW**, this   7th   of April, 2010, **IT IS HEREBY ORDERED** that:

(1) Defendants' Motion for a New Trial and/or for Judgment as Matter of Law and/or to Amend or Alter Judgment (Doc. 85) is **GRANTED** as to the Motion for a New Trial, and **DENIED AS MOOT** as to the remainder.

(2) The Judgment in favor of Plaintiffs James Zarra, Patrick Pribula, and Robert Micheletti against Defendants Antoinette Valenti, Jerry Wall, John Bolin, John LaNunziata, John Marianacci, Nick DeAngelo, and Raymond Bernardi (Doc. 81) is **VACATED**.

(3) Plaintiff's First Motion for Attorney Fees (Doc. 97) is **DENIED AS MOOT**.

  /s/ A. Richard Caputo  
A. Richard Caputo  
United States District Judge